IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MANUEL GUERRA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:23-CV-1135-DMC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

   Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 4 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 9 (consent minute order).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 11, 13, and 14.

   The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted; |

///

2

|  |  |  |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 24, 2021. See CAR 23.[1] In the application, Plaintiff claims disability began on November 18, 2020. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on February 14, 2022, before Administrative Law Judge (ALJ) Matilda Surh. In an April 4, 2022, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disk disease of the lumbar spine status-post surgery, and degenerative disk disease of the cervical spine, and migraines.

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3. The claimant has the following residual functional capacity: light work; the claimant can lift 10 pounds frequently and 20 pounds occasionally; he can sit/stand/walk for six hours in an eight-hour day; he requires a sit/stand option with the need to change positions every 20 minutes, but he can remain on-task while doing so; he can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; the claimant can occasionally stoop, kneel, and crawl; he can occasionally reach overhead with the bilateral upper extremities.

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 25-36.

After the Appeals Council declined review on April 24, 2022, this appeal followed.

///
///
///
///
///

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on August 21, 2023, ECF No. 10.

4

## III.  DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate Plaintiff's subjective statements and testimony; (2) the ALJ failed to properly evaluate medical opinions from Drs. Zhang and Sharma; and (3) the Appeals Council failed to consider new evidence.  See ECF No. 11.

### A.    Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

/ / /

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ evaluated Plaintiff's statements and testimony at Step 4 of the sequential evaluation process. See CAR 27-33. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant makes the following allegations regarding the intensity, persistence, and limiting effects of his symptoms. He alleges disability due to herniated disc, one disc smaller than normal, back pain, leg pain, neck pain, and migraines. (Exh. 2E, 4E). He testified he is unable to work because his pain is too strong when he does something. When his pain level is too high, he has to lie down on the sofa for 15 to 30 minutes. He has pain in the low back that goes up to the neck. The medication helps him to walk for about 10 minutes but not to do things. He had back surgery in February and was told his recovery may be a year or better.

CAR 27.

The ALJ concluded as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the medical and other objective evidence of record and do not support the existence of limitations greater than those reported above. The record includes no history of treatment for neck or back pain prior to September 2020. Notably, the claimant's limited treatment before that (from June to

///

September 2020) made no notation of a prior history of back or neck pain or injury. (*See*, Exh. 1F).

CAR 27.

Following this conclusion, the ALJ outlined a detailed summary of Plaintiff's longitudinal medical history, which is lengthy and not repeated here. See id. at 27-31. The ALJ then provided the following analysis:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As detailed above, the record overall shows the claimant was treated for less than a year for low back pain with radiculopathy before choosing to undergo surgery. He initially sought treatment for back pain in September 2020 with a chiropractor, reporting prior injuries with flareups from time to time, and his current problems were the same kind of problem. (Exh. 3F). Notably, the claimant's limited medical treatment for other conditions from June to September 2020 made no notation of a history of back or neck pain/injury and no complaints of current pain. (*See*, Exh. 1F). He eventually sought medical treatment for back pain with his primary care provider in December 2020. He was initially started on anti-inflammatory medication with reported improvement but stopped the medication shortly after due to his stomach hurting. He was then referred out for various consultations with physical medicine and rehabilitation, pain management, and neurosurgery. (*See*, Exh. 1F). Imaging of the lumbar spine showed degrative changes. (Exh. 1F). Most of the claimant's treatment was conducted via telemedicine, but of the few physical examinations performed, findings noted tenderness, muscle spasms, and decreased range of motion of the lumbar spine and positive straight leg raise at times. Muscle strength in the lower extremities remained overall normal throughout, and abnormality of sensation in the lower extremities was noted at times. Gait was generally normal up until September 2021. (*See*, Exh. 1F, 2F, 4F, 6F, 7F).
>
> The claimant tried various conservative treatment modalities for his low back pain with varying degrees of improvement reported before he eventually decided to proceed with surgery. He was referred for physical therapy, which was mostly performed via telemedicine, but reported worsened pain with therapy and there is little evidence of continuing therapy. He tried one epidural steroid injection with partial relief reported. Although he later reported the injection had helped for a few months, which is supported by the gap in follow-up/treatment for the previous three months at that time. Shortly after the epidural injection, he returned to neurosurgery in June 2021 to discuss his options and stated he would consider surgery. He tried anti-inflammatory medication and gabapentin initially but stopped it shortly after. He later stated he preferred not to take medication due to his stomach hurting, as well as being a truck driver. Although, he was later restarted on anti-inflammatory medication and

gabapentin. He was also prescribed a short course of oral steroids a couple of times, which he reported was very helpful. (*See*, Exh. 1F, 4F, 6F). He was seen by neurosurgery in October 2021 and wanted to proceed with surgery, but in November was noted to still be undecided. He eventually decided to go forward with surgery but could not be scheduled until February 2020. While awaiting surgery, he continued on prescribed medications and his physician provided modified work activity restrictions for him, which were very similar to the residual functional capacity limitations found herein. (*See*, Exh. 7F, 8F). As there is no evidence of record after the claimant's surgery and the hearing was less than a week after his surgery, there is no evidence of efficacy of the surgery.

As detailed above, the claimant's complaints of neck pain have been intermittent. Cervical imaging showed degenerative changes and facet arthropathy. There is little evidence of complaints or treatment for his neck outside of his routine chiropractic treatment after February 2022 until January 2022 (*See*, Exh. 1F, 3F). There are little physical examination findings of record regarding the claimant's neck outside of the consultative examination in July 2021, which noted some tenderness to palpation and pain with range of motion of the cervical spine, but no muscle spasms. The consultative examiner also noted some tenderness to palpation of both shoulders and pain on abduction of the shoulders, but attributed this to tendinitis, not the claimant's cervical spine. (Exh. 2F). In January 2022, the claimant told his pain management provider he wanted to address his neck pain and radiation to the upper extremities. He was sent for MRI of the cervical spine which showed mild spondylosis and moderate foraminal stenosis. However, no procedures were indicated at that time, as the claimant was scheduled for lumbar spine surgery the following week. (*See*, Exh. 8F). The claimant has not been sent for EMG of the upper extremities and there has been no treatment recommended outside of the medications he was taking for his low back pain.

Although the claimant has been diagnosed with migraines, it appears that these were complaints of headaches related to medication side effects and chronic sinusitis. He has had no referral to neurology for migraines and made only a few complaints of headaches to his medical providers. He was prescribed naratriptan and fluticasone nasal spray for migraines in August 2021 and his migraines were noted to be stable in December, at which time a refill was provided only for the allergy nasal spray. (*See*, Exh. 1F, 4F 7F).

There is little evidence of the claimant's activities of daily living prior to his surgery, although he was noted in the medical evidence to report worsening pain with standing/walking/sitting over 30 minutes and bending. (*See*, Exh. 1F, 4F). He testified that he did not really do chores or cooking prior to his surgery although he would try and then have increased pain. He also testified he was able to shower and dress himself before his surgery, but his wife would help him when he was in a lot of pain. He testified he did not drive before his surgery, although he would go to the store if his wife or daughter drove.

Based on the foregoing described imaging and physical examination findings and treatment eventually leading to lumbar spine surgery, which are consistent with severe impairments of the cervical and lumbar spine, I find the claimant has the above residual functional capacity to perform

light work with occasional posturals but no climbing ladders, ropes, or scaffolds and no limitations with balance. A sit/stand option has also been included in consideration of the claimant's complaints of worsening pain with standing/walking/sitting over 30 minutes. I note that the claimant testified he did not have balance issues and there is no evidence of weakness or instability with standing or ambulating in the medical evidence. The claimant testified he is using a cane, but this has been since his surgery, which was less than a week prior to the hearing; and there is no evidence of record that an assistive device is needed for ambulation. I have also included limitations with overhead reaching based on the claimant's neck pain and the abnormal findings at the consultative examination regarding the shoulders and cervical spine. (*See*, Exh. 1F, 2F, 3F, 4F, 7F, 8F).

CAR 31-33.

According to Plaintiff:

> . . .[T]he ALJ did not explain how Plaintiff's allegations were actually inconsistent with the objective medical evidence. For instance, Plaintiff's allegation that he was only able to walk for about 10 minutes before he experienced pain (Tr. 51) was consistent with his abnormal examinations that showed he had positive straight leg raising testing on the right side with pain and numbness in the right lower extremity at 60 degrees in sitting and supine position (Tr. 463). Plaintiff's allegation was also consistent with his right leg limp and his inability to do toe walking and heel walking (Tr. 463). Similarly, Plaintiff's allegation that his pain limited his ability to lift (Tr. 377) was consistent with his need for back surgery in February 2022 (Tr. 723-26).
> In short, the ALJ just recited the objective medical evidence and did not explain how it actually disproved any of Plaintiff's well-documented pain and dysfunction. . . .
> In addition, the ALJ found Plaintiff's allegations were not consistent with the record that showed he did not receive treatment for his neck and back pain before September 2020 (Tr. 27). Yet, Plaintiff alleged he became disabled on November 18, 2020 – not in September 2020 (Tr. 25). Thus, any lack of medical evidence before Plaintiff's alleged onset date was inconsequential. Especially in light of the record that showed extensive treatment during the period-at-issue that culminated with a back surgery because Plaintiff had presented with neurogenic claudication type symptoms that were only partially improved with other measures (Tr. 724).
> Similarly, the ALJ mischaracterized Plaintiff's treatment record. Specifically, the ALJ found Plaintiff only sought treatment "for less than a year for low back pain with radiculopathy before choosing to undergo surgery" (Tr. 31). The ALJ appears to minimize Plaintiff's symptoms because he was recommended for surgery within a year of his alleged onset date. Yet, if anything, the fact that Plaintiff's treatment providers already recommended surgery in October 2021 showed how severe his pain and dysfunction were (Tr. 534).
> Lastly, even if the ALJ would have properly cited and explained the objective medical evidence, the ALJ's rationale was deficient because she only relied on objective medical evidence. Specifically, the Ninth Circuit has held that "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying

> impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. […] The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." *Burch*, 400 F.3d at 680; *see also Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."). Likewise, the regulations state "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

ECF No. 11, pgs. 12-14.

The Court does not agree with Plaintiff that the ALJ simply recited the objective medical record without explaining how the record undermined Plaintiff's statements and testimony.  First, the ALJ noted that the objective medical evidence revealed that Plaintiff sought only conservative treatment for his back pain before finally opting for surgery.  This tends to undermine Plaintiff's statements and testimony of disabling back pain.  Second, as to neck pain, the ALJ noted that Plaintiff's treatment had been intermittent, which also undermines Plaintiff's statements and testimony of disabling pain.  Third, as to Plaintiff's alleged migraines, which Plaintiff does not discuss in his brief, the ALJ noted that Plaintiff's complaints of headaches stemmed from medication side-effects, not a separate disabling migraine impairment.  Again, this undermines Plaintiff's statements and testimony of disability due to migraines.  Finally, the ALJ noted that Plaintiff's testimony of the need to use a cane is not supported by any objective evidence, again undermining Plaintiff's statements and testimony.

Further, contrary to Plaintiff's argument that the ALJ rejected Plaintiff's statements and testimony solely based on inconsistency with the objective medical evidence, the hearing decision reveals that inconsistency with the objective record was only one of several factors outlined above which the ALJ considered, such as lack of aggressive treatment leading up to the decision to undergo surgery and the lack of objective evidence supporting Plaintiff's testimony regarding disability due to migraines as well as the need to use a cane.

/ / /

/ / /

**B.    Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or

11

manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the

12

record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ considered medical opinions offered by Plaintiff's treating physician, Dr. Zhang, an agency consultative internal medicine examining physician, Dr. Sharma, and various agency reviewing physicians. See CAR 33-34. Plaintiff challenges the ALJ's evaluation as to Drs. Zhang and Sharma. See ECF No. 11, pgs. 15-24.

        1.     Dr. Zhang

As to Dr. Zhang, the ALJ stated as follows:

> In November 2021, the claimant's treating physician [Dr. Zhang] provided modified work activity limitations of standing and walking intermittently up to 50% of a shift, occasional bending at the waist and twisting, no climbing of ladders, no use of scaffolds, no work at height, and lift/carry/push/pull limited to no more than 20 pounds. This modified work activity was for the months of November 2021 through March 2022. (Exh. 7F/41, 59). I find these temporary work limitations are consistent with the residual functional capacity herein. They are supported with the examinations by this provider at the time, which noted worsening gait and positive straight leg raise. (Exh. 6F/5-7, 7F/34-36, 50-53). The limitations are also overall consistent with the record at that time including the examinations at the emergency room, the consultative examination findings just a few months prior, and the abnormalities shown on imaging of the cervical and lumbar spine. (Exh. 1F/38, 82, 85, 2F, 6F/15-17, 8F/85-89).

CAR 34.

Plaintiff argues:

> Here, the ALJ did not properly evaluate the medical opinion from Dr. Zhang. Specifically, the ALJ found Dr. Zhang's opinion was supported by her examinations of Plaintiff and was consistent the other objective medical evidence in the record (Tr. 34). Yet, the ALJ did not adopt crucial portions of Dr. Zhang's opinion.
> In particular, as noted above, Dr. Zhang opined Plaintiff was only able to stand intermittently for 50% of the workday and walk intermittently for 50% of the workday (Tr. 562, 580). The ALJ's residual functional capacity finding, on the other hand, indicated Plaintiff was able to sit, stand, or walk for six hours out of eight hours each (Tr. 27). So, while Dr. Zhang opined Plaintiff was limited to sitting for 4 hours and walking for 4 hours, the ALJ found Plaintiff was able to sit for 6 hours and walk for 6 hours (Tr. 27, 562, 580). Yet, agency policy mandates "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Because the ALJ did not adopt crucial portions of Dr. Zhang's opinion, the ALJ's evaluation was not well-supported.

ECF No. 11, pgs. 16-17.

///

13

Plaintiff takes issue with the ALJ's finding that Plaintiff has the residual functional capacity for light work including the ability to sit/stand/walk for up to six hours in an eight-hour workday with the requirement for a sit/stand option and need to change positions every 20 minutes. According to Plaintiff, this finding is inconsistent with the opinion of Dr. Zhang, which the ALJ accepted, that Plaintiff is only able to sit/stand intermittently for up to 50% of the workday. Plaintiff argues this inconsistency is unexplained and, thus, the ALJ erred with respect to Dr. Zhang's opinion.

The Court does not agree. While the ALJ accepted Dr. Zhang's opinions, which included a limitation on sitting and standing for only 50% of the day, Dr. Zhang did not opine as to a walking limitation. Combined for sitting, standing, and walking, the ALJ limited Plaintiff to such activities for up to six hours total in an eight-hour day. The ALJ also required a change-of-position option every 20 minutes when sitting and/or standing. By including a limitation on walking and a limitation for a change of position every 20 minutes when sitting or standing, the Court cannot say that the ALJ's residual functional capacity assessment is inconsistent with Dr. Zhang's opinion such that further explanation was required. As Defendant notes, an ALJ's residual functional capacity assessment need only be consistent with a medical opinion, not identical to it. See Turner v. Comm'r, Soc. Sec. Admin., 613 F.3d 1217, 1223 (9th Cir. 2010); Kitchen v. Kijakazi, 82 F.4th 732, 740 (9th Cir 2023); see also 20 C.F.R. § 404.1545(a)(1) (stating ALJ is responsible for assessing the RFC based on all the relevant evidence). Here, the ALJ's assessment is consistent with Dr. Zhang's opinions, which the ALJ accepted.

Further, as Defendant also observes, Dr. Zhang opined as to temporary limitations which do not meet the 12-month duration requirement for a 50% limitation. See Barnhart v. Walton, 535 U.S. 212, 222-23 (2002) (holding 12-month durational requirement for disability applies to both impairment and its severity level).

/ / /

/ / /

/ / /

/ / /

    2.    <u>Dr. Sharma</u>

Regarding Dr. Sharma, the ALJ provided the following analysis:

> The consultative internal medicine examiner [Dr. Sharma] opined the claimant is able to push, pull, lift, and carry 10 pounds frequently and 20 pounds occasionally; walk and/or stand two hours per day with normal breaks; does not need any assistive device to walk; can sit six hours per day with normal breaks; bending and stooping should be done occasionally; and limitations in reaching overhead above the shoulder with both the arms to occasionally. (Exh. 2F). I find this opinion persuasive except for the limitation for walking/standing only a total of two hours. The opinion is generally supported by the examination findings, including tenderness to palpation and pain on abduction of the shoulders, tenderness to palpation of the cervical and lumbar spine and paraspinals, decreased range of motion of the lumbar spine, decreased sensation in the L5-S1 distribution of the right lower extremity, positive straight leg raising on the right, and walking with a limp on the right lower extremity but without the use of an assistive device. The opinion is also generally consistent with the record as whole except for standing/walking limited to two hours total. Examination findings have generally noted normal muscle strength in the lower extremities with no evidence of weakness, normal gait, and tenderness and decreased range of motion in the lumbar spine, with positive straight leg raise on the right and abnormal gait noted in the five months prior to his surgery. Imaging of the lumbar and cervical spine have shown abnormalities. (Exh. 1F/ 31-35, 38, 82, 85, 4F/6, 11-18, 6F/5-7, 15-17, 7F/34-36, 50-53, 8F/85-89).

CAR 33-34.

As to Dr. Sharma, Plaintiff argues:

> . . .[T]he ALJ found the objective medical evidence showed Plaintiff had normal muscle strength and a normal gait (Tr. 33-34). Yet, in the same sentence, the ALJ also noted Plaintiff had tenderness and decreased range of motion in his lumbar spine, had positive straight leg raise testing, and an abnormal gait (Tr. 33). The ALJ also pointed out that Plaintiff's diagnostic imaging showed abnormal findings in Plaintiff's cervical and lumbar spine (Tr. 34). Because the ALJ cited to evidence that was actually consistent with Dr. Sharma's opinion, the ALJ's rationale did not provide a well-supported basis for rejecting Dr. Sharma's assessment of standing and walking limitations.
>     Significantly, the other objective evidence contains numerous abnormal findings that were consistent with Dr. Sharma's opinion. For instance, on exam with his treatment providers, Plaintiff had 50% range of motion in his lumbar spine (Tr. 377); pain, tenderness, and fixation in his cervical and thoracic spine (Tr. 469, 470, 471, 472, 473); restricted range of motion in his cervical spine (Tr. 469); spasms and tenderness in his lumber spine (Tr. 507, 556, 573); decreased range of motion in his lumbar spine (Tr. 507, 556, 573); positive right leg raise test (Tr. 507, 556, 573); positive left straight leg raise test (Tr. 556, 573); and an unstable gait (Tr. 507).

/ / /

> A January 2021 x-ray of Plaintiff's cervical spine showed moderate degenerative changes with osteophyte formation of the lower cervical spine predominately from C4-C7 with joint space narrowing and anterior osteophytosis and moderate facet arthropathy (Tr. 430, 619). And a January 2022 MRI of Plaintiff's cervical spine showed mild multilevel cervical spondylosis superimposed on a congenitally narrow cervical spinal canal that caused moderate foraminal stenosis from C2-C7 (Tr. 691, 713). All this evidence was consistent with Dr. Sharma's opinion that Plaintiff was limited to walking and/or standing for 2 hours per day (Tr. 33).
>
> Moreover, Dr. Sharma's own examination clearly supported the opinion that Plaintiff was limited to walking and/or standing for 2 hours per day (Tr. 33). In particular, on exam with Dr. Sharma, Plaintiff had tenderness to palpation over his cervical spine in the paravertebral region; pain on forward flexion at 20 degrees; tenderness to palpation over the lumbar spine and in the paravertebral region; pain on forward flexion at 60 degrees and extension at 20 degrees; straight leg raising was positive on the right side with pain and numbness in the right lower extremity at 60 degrees in sitting an supine position; tenderness to palpation over the superolateral aspect of both the shoulders; pain at abduction of the right shoulder at 100 degrees and left at 130 degrees; and decreased sensation to pinprick in the L5-S1 distribution of the right lower extremity (Tr. 463). Most significant, Plaintiff walked with a limp on the right lower extremity and was not able to do toe walking and heel walking (Tr. 463).

ECF No. 11, pgs. 18-19.

At issue again is the doctor's opinion regarding Plaintiff's ability to walk and stand. Here, Plaintiff contends that the ALJ failed to adequately explain why Dr. Sharma's opinion that Plaintiff can only stand/walk for up to two hours was rejected. The Court does not agree. As discussed above, the ALJ considered all the medical opinion evidence in determining residual functional capacity, including the opinion of Plaintiff's treating physician, Dr. Zhang. Dr. Zhang opined that Plaintiff could stand/walk for considerably longer durations during an eight-hour workday that did Dr. Sharma. The ALJ properly considered the consistency of Dr. Sharma's more limiting opinion with the other medical opinions of record, including those provided by Dr. Zhang as well as the agency non-examining specialists, who both found no stand/walk restrictions. See CAR 34 (citing Exhibits 1A and 3A).

/ / /

/ / /

/ / /

/ / /

**C.      Evidence Submitted to the Appeals Council**

The Appeals Council received new evidence and stated as follows as to such evidence:

> You submitted records and reports relating to your 2022 lumbar surgery from Kaiser Permanente, dated February 9, 2022, through August 22, 2022, (20 pages, total) and a statement from James Irwin, D.C., dated May 2, 2022 (1 page). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> CAR 2.

The Appeals Council provided no further analysis or discussion.

Plaintiff argues:

> The Appeals Council found that these updated treatment notes and medical opinions did not show a reasonable probability that they would change the outcome of the ALJ's decision (Tr. 2). However, when the ALJ evaluated Plaintiff's symptoms and impairments, the ALJ noted "[a]s there is no evidence of record after the claimant's surgery and the hearing was less than a week after his surgery, there is no evidence of the efficacy of the surgery" (Tr. 32). Thus, any evidence regarding Plaintiff's impairments and limitations after his surgery was extremely important to the ALJ's analysis.
> And, as detailed above, the additional evidence submitted to the Appeals Council included Plaintiff's post-operative treatment notes that showed he was only ambulating for about 15-20 minutes with pain on his right side and had intermittent numbness in his left thigh (Tr. 67-68); had pain in his right hip and tingling in his right toes about 7 weeks after surgery (Tr. 70); had a moderately antalgic gait with a single point cane; restricted range of motion in his lumbar spine; decreased strength in his hips and knees; restricted flexibility in his hamstrings, quads, and piriformis; moderate tenderness to palpation through bilateral thoracic and lumbar paraspinals; and impaired balance (Tr. 71); had lower back pain when he changed from sitting to standing (Tr. 74); had a moderately antalgic gait with a single point cane; restricted range of motion in his lumbar spine; decreased strength in his hips and knees; restricted flexibility in his hamstrings, quads, and piriformis; moderate tenderness to palpation through bilateral thoracic and lumbar paraspinals; and impaired balance (Tr. 75); had a diagnosed disease or disorder that substantially impaired or interfered with his mobility; a severe disability in which he was unable to move without the aid of an assistive device; and a significant limitation in the use of his lower extremities (Tr. 63); was eligible for a permanent disabled person parking placard or license plate (Tr. 63); and had significant functional limitations that would last at least through January 31, 2023 (Tr. 79). These treatment notes were thus dispositive evidence that had a reasonable probability of changing the ALJ's evaluation of Plaintiff's symptoms and impairments.

ECF No. 11, pgs. 22-23.

17

Following the February 14, 2022, hearing before the ALJ, Plaintiff's counsel submitted 20 pages of additional evidence. This material has been made part of the current administrative record. See CAR 60-79. This evidence was considered by the Appeals Council and determined not to have a bearing on the outcome of the case as determined by the ALJ. See CAR 2.

The evidence covers the post-operative period following Plaintiff's pre-hearing surgery in early February 2022. On March 24, 2022, Plaintiff reported that, two weeks following surgery, his "pre-operative symptoms have resolved with the exception of mild pain in the left anterior thigh." CAR 67-68. Plaintiff had weaned himself off narcotic pain medications and was able to ambulate without the use of an assistive device. See id. at 68. A physical therapy report from April 29, 2022, indicates that, about eleven weeks following surgery, Plaintiff reported that he can walk about a mile with sitting/rest breaks. See id. at 74. Plaintiff rated his pain at 7 out of 10. See id. On May 6, 2022, Dr. Zhang indicated that Plaintiff was approved for modified sedentary work activities through August 2022. See id. at 77. On August 11, 2022, Dr. Zhang extended this approval through September 2022. See id. at 78. On August 22, 2022, another doctor extended the approval through January 2023. See id. at 79.

Plaintiff argues the case must be remanded to allow for this evidence to be considered, particularly given the ALJ's finding in this case that there was a lack of post-surgery objective evidence. A case may be remanded to the agency for the consideration of new evidence if the evidence is material and good cause exists for the absence of the evidence from the prior record. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (citing 42 U.S.C. § 405(g)). In order for new evidence to be "material," the Court must find that, had the agency considered this evidence, the decision might have been different. See Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990). The Court need only find a reasonable possibility that the new evidence would have changed the outcome of the case. See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984). The new evidence, however, must be probative of the claimant's condition as it existed at or before the time of the disability hearing. See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)). In

1  Sanchez, the court concluded that the new evidence in question was not material because it
2  indicated "at most, mental deterioration after the hearing, which would be material to a new
3  application, but not probative of his condition at the hearing." Id. at 512 (citing Ward v.
4  Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).
5       Here, the evidence in question is not "new" in that it was included in the current
6  record and was considered by the Appeals Council.  Further it is not material in that it covers a
7  period following the ALJ's hearing decision, which was issued on April 4, 2022.  In any event,
8  the new evidence supports the ALJ's disability determination in this case.  Specifically, Plaintiff
9  reported in on March 24, 2022, that just two weeks after surgery his pre-operative symptoms had
10 resolved except for minor thigh pain.  Additionally, Plaintiff's doctors opined that Plaintiff could
11 return to at least sedentary work activity beginning in May 2022.  Here, the Commissioner,
12 through the Appeals Council, considered the post-hearing evidence submitted and correctly
13 concluded that it had not bearing on the disability decision rendered by the ALJ.

### IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment, ECF No. 11, is DENIED.
2. Defendant's motion for summary judgment, ECF No. 13, is GRANTED.
3. The Commissioner's final decision is AFFIRMED.
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  July 17, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE